IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIDNEY R. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 10-cv-5153 |
| v. ) | Judge Robert M. Dow, Jr. |
| ) | |
| FEDERAL DEPOSIT INSURANCE ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed this action asserting claims under the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA") [1]. Before the Court are Defendant's motion to dismiss [16] pursuant to Federal Rule of Civil Procedure 12(b)(1) and Plaintiff's motion for leave to file a sur-reply [28]. For the reasons stated below, Defendant's motion to dismiss [16] is granted and Plaintiff's motion for leave to file a sur-reply [28] is granted.

**I.   Background**[1]

Plaintiff Sidney R. Miller ("Plaintiff") owned eleven currency exchanges, each of which maintained several different accounts with Corus Bank N.A. ("Corus Bank"). On September 11, 2009, Corus Bank failed and Defendant FDIC ("Defendant" or "the FDIC") was appointed receiver. The FDIC mailed a letter to individuals with potential claims against Corus Bank, including Plaintiff, notifying them of their right to file claims with the FDIC pursuant to FIRREA. See 12 U.S.C. § 1821(d)(3)(B) (2010). Plaintiff submitted a claim to the FDIC on December 17, 2009.

---
[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g., Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir. 1999).

On May 18, 2010, the FDIC mailed Plaintiff a notice of disallowance of his claim. The notice was sent by certified mail to the post office box address that Plaintiff had provided to Corus Bank. Plaintiff acknowledges that the address was valid, and further alleges that he directed the post office to forward mail from that address to another address of his through the end of May 2010. However, Plaintiff alleges that he never received the May 18 notice, and suggests that it may never have been delivered. Plaintiff also alleges that the FDIC never received a return receipt indicating that the notice had been delivered successfully.

Plaintiff alleges that he was in regular telephone and e-mail contact with the FDIC during May 2010 and that the FDIC never mentioned to him in the course of their communications that his claim had been denied. Plaintiff contends that he believed that the FDIC had not resolved his claim, and that, accordingly, he waited until July 9 to check on the status of the claim. Plaintiff states that on August 12, an FDIC claim representative advised him that another FDIC employee was checking on the status of his claim and would contact him the following day. On August 13, FDIC Supervisor Paul Patterson informed Plaintiff that the FDIC had mailed a notice of denial to him on May 18. According to Plaintiff, Patterson also advised that the letter notification had been returned as undeliverable. On August 16, Plaintiff filed a complaint seeking judicial review of the FDIC's decision to deny his claim.

**I.   Analysis**

    **A.   Whether the Court Should Construe Defendant's Motion as a Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction or a Rule 56 Motion for Summary Judgment**

As a preliminary matter, the Court addresses Plaintiff's argument that Defendant's motion is improperly styled as a Rule 12(b)(1) motion and should instead be converted to a Rule 56 motion for summary judgment. Plaintiff's argument centers on an Illinois Appellate Court

order upholding the liquidation of two of Plaintiff's currency exchanges, which Defendant attached as an exhibit to its motion. Plaintiff argues that Defendant's inclusion and discussion of the Illinois Appellate Court order goes beyond the pleadings and touches upon the merits of the case, effectively rendering it a motion for summary judgment rather than a motion to dismiss. Defendant counters that its motion to dismiss is concerned only with Plaintiff's failure to meet the FIRREA filing deadline – which Defendant contends is a jurisdictional matter inappropriate for summary judgment – and that its discussion of the Appellate Court order functions solely to demonstrate that Plaintiff has substantial experience in receivership proceedings and litigation and thus must be aware of FIRREA deadlines.

Plaintiff's contentions rest on a misapprehension of the nature of a motion to dismiss for lack of subject matter jurisdiction. As the Seventh Circuit explained in *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993), while a grant of summary judgment is a decision on the merits, "a court must dismiss the case without ever reaching the merits if it concludes that it has no jurisdiction." Because jurisdiction is separate from the merits, a motion to dismiss for want of jurisdiction under Rule 12(b)(1) cannot "evolve into a dismissal pursuant to Rule 56," and "discussing the interplay of Rule 12(b)(1) and Rule 56 verges on non sequitur." *Id*. Contrary to Plaintiff's supposition, a court may go outside the pleadings in considering whether to grant a motion to dismiss for lack of jurisdiction: "The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id*. (quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979)). The Court thus

considers the motion as construed – that is, as one seeking dismissal for lack of subject matter jurisdiction.[2]

Federal courts are courts of limited jurisdiction; "they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Transit Express, Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001). Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The burden of establishing that a district court has proper jurisdiction over an action lies with the plaintiff. *Transit Express*, 246 F.3d at 1023. A defendant arguing that a plaintiff has not met this burden with respect to an action (or a claim) may move for dismissal under Rule 12(b)(1) on the ground that the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

### B. Whether the FIRREA Filing Deadline Establishes a Jurisdictional Limit or a Statute of Limitations

In 1989, Congress enacted FIRREA as a response to a national banking crisis. See *RTC Commercial Assets Trust 1995-NPR-1 v. Phoenix Bond & Indem. Co.*, 169 F.3d 448, 456 (7th Cir. 1999). Congress designed the act "to give the FDIC power to take all actions necessary to resolve the problems posed by a financial institution in default." *FDIC v. Wright*, 942 F.2d 1089, 1096 (7th Cir. 1991) (citing H.R. Rep. No. 54(I), 101st Cong., 1st Sess. 330, reprinted in 1989 U.S. Code Cong. & Admin. News 126). Under FIRREA, the FDIC may be appointed as a receiver for a failing financial institution. 12 U.S.C. § 1821(c)(2)(A)(ii). An individual who

---

[2] As discussed below, Plaintiff argues that Defendant's motion does not actually present a jurisdictional issue. Plaintiff interprets the FIRREA deadline at issue as a statute of limitations – and thus as an affirmative defense that must be considered on the merits. However, for the reasons explained in Section B of this Opinion, the Court concludes that the FIRREA deadline presents a jurisdictional issue appropriate for consideration in a Rule 12(b)(1) motion.

4

alleges that the failed financial institution had outstanding obligations to him may file a claim against the FDIC in its capacity as receiver. See *Maher v. FDIC*, 441 F.3d 522, 525 (7th Cir. 2006); see also 12 U.S.C. § 1821(d)(3). The FDIC then has 180 days to allow or deny the claim. *Maher*, 441 F.3d at 525; 12 U.S.C. § 1821(d)(5)(A)(i). If the FDIC denies the claim, then the claimant has 60 days to seek judicial review of that determination in federal court; if the FDIC fails to render a decision within the 180-day period, the claimant has 60 days from the conclusion of the 180-day period to file suit. *Maher*, 441 F.3d at 525; 12 U.S.C. § 1821(d)(6)(A)(i)-(ii). In either case, if a claimant fails to file suit before the end of the 60-day period, "the claim shall be deemed to be disallowed" and that determination cannot be reviewed by the courts. 12 U.S.C. § 1821(d)(6)(B)(ii). "Federal courts lack jurisdiction to address claims that fail to comply with FIRREA's administrative claims process." *Maher*, 441 F.3d at 525 (citing 12 U.S.C. § 1821(d)(6)(A)); *Maher v. Harris Trust & Sav. Bank*, 75 F.3d 1182, 1191 (7th Cir. 1996); *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 193 (7th Cir. 1993).

Defendant argues that the 60-day FIRREA deadline for seeking judicial review of a claim determination (or lack thereof) should be understood as a threshold jurisdictional requirement, not as a statute of limitations. Under Defendant's interpretation, a plaintiff's failure to comply with the deadline renders the FDIC determination (or lack thereof) of a plaintiff's claim unreviewable by federal courts. A court would be required to dismiss any suit that such a plaintiff might file under Rule 12(b)(1) for lack of subject matter jurisdiction.

Plaintiff disagrees. He contends that the FIRREA deadline should be understood as a statute of limitations. Under Plaintiff's interpretation, whether a plaintiff complied with the deadline would be an affirmative defense that is subject to waiver, estoppel, and other equitable doctrines.

The Seventh Circuit appears to recognize the 60-day FIRREA deadline as one that establishes a jurisdictional requirement rather than a statute of limitations defense. See *Maher*, 441 F.3d at 525. In *Maher*, the Seventh Circuit held that "federal courts lack *jurisdiction* to address claims that fail to comply with FIRREA's administrative claims process." *Id.* (emphasis added). In other words, a failure to meet the filing deadline destroys subject matter jurisdiction over a plaintiff's claims, rather than simply providing a defense to those claims. As Plaintiff points out, an earlier Seventh Circuit decision, *Capitol Leasing*, refers to the FIRREA filing deadline as a "statute of limitations." *Capitol Leasing*, 999 F.2d at 190. However, the pertinent language in *Capitol Leasing* – in which, it bears mentioning, the court of appeals was *not* called upon to decide the precise question presented here – is ambiguous at best. Despite describing the deadline as a statute of limitations, the court concluded that because "Capitol missed a deadline it easily could have discovered by reading the statute" * * * "[t]he district court had no *jurisdiction* over its untimely claim and *properly dismissed Capitol's suit pursuant to Rule 12(b)(1)*." *Id.* at 193 (emphasis added). Moreover, at least one subsequent Seventh Circuit opinion has relied on *Capitol Leasing* in holding that the FIRREA deadline creates a threshold jurisdictional question. See *Maher v. Harris Trust & Sav. Bank*, 75 F.3d 1182, 1190 (7th Cir. 1996) (ruling that "compliance with the FIRREA process is a strict jurisdictional prerequisite to a claim in federal district court against the receiver" (citing *Capital Leasing*, 999 F.2d at 192)).[3]

---

[3] Plaintiff relies heavily on *McAllister v. FDIC*, 87 F.3d 762, 767 (5th Cir. 1996), in which the Fifth Circuit ruled that the 60-day FIRREA deadline creates a statute of limitations that may be tolled when the FDIC intentionally misleads claimants such that they miss the deadline. Plaintiff's reliance on *McAllister* is unpersuasive. First, as a Fifth Circuit case, *McAllister* is not binding on this Court. Second, to the extent that *McAllister* conflicts with binding Seventh Circuit precedent that interprets the FIRREA deadline as creating a nonwaivable jurisdictional requirement, this Court must adhere to the Seventh Circuit's teachings. See *Maher v. FDIC*, 441 F.3d at 525; *Maher v. Harris Trust & Sav. Bank*, 75 F.3d at 1190. Finally, even if the Court *could* rely on *McAllister* as persuasive authority, it would find the case inapposite in view of its factual distinction from Plaintiff's case. In *McAllister*, a federal receiver, the

## C. Whether Plaintiff Complied with the 60-Day FIRREA Deadline

Having concluded that the 60-day FIRREA deadline constitutes a jurisdictional requirement, the Court now must determine whether Plaintiff satisfied the deadline such that the Court has jurisdiction over the instant action. On May 18, 2010, the FDIC issued a notice that Plaintiff's claim had been disallowed. That notice was sent to a post office box that Plaintiff previously had provided to Corus Bank. Defendant argues that Plaintiff had 60 days from May 18 – or until July 17, 2010 – to file suit on his claim in federal court. Plaintiff did not file his lawsuit until August 16, 2010. Defendant therefore maintains that Plaintiff missed the 60-day FIRREA deadline, and that this Court lacks jurisdiction over Plaintiff's lawsuit. Plaintiff counters that he never received the FDIC's notice of disallowance. As such, he argues that the 60-day window did not commence until termination of the 180-day statutory period in which the FDIC was required to provide notice of disallowance. Plaintiff argues (and Defendant does not contest) that the 180-day period concluded on June 15, 2010. Plaintiff therefore contends that he

---

Resolution Trust Corporation ("RTC"), repeatedly provided the plaintiffs with misleading information that indicated that the plaintiffs' FIRREA claims would be paid in full. *Id.* at 764. It was not until four years after their initial claims had been filed that the plaintiffs finally learned they would not be paid and sought federal court review. *Id.* The court held that the RTC's misrepresentations tolled the 60-day FIRREA deadline under the doctrine of equitable estoppel. *Id.* at 767. Plaintiff argues that, as in *McAllister*, the receiver (here, the FDIC) misled him by failing to mention that his claim had been denied in the numerous phone calls and email exchanges that he had with FDIC employees in May of 2010. However, the FDIC's failure to inform Plaintiff of the denial of his claim (communication of which is statutorily required only via mail (see 12 U.S.C. § 1821(d)(3)(C)) is a far cry from the type of affirmative misrepresentations attributed to the RTC in *McAllister*. See *id.* at 764. Plaintiff fails to point to any evidence that the FDIC purposefully lied to Plaintiff regarding its decision on his claim. Moreover, as Defendant plausibly suggests, it is possible that the FDIC employees with whom Plaintiff spoke did not discuss the FDIC's denial of Plaintiff's claim precisely *because* they believed that Plaintiff already knew that his claim had been denied by virtue of having received the May 18 letter. Thus, even if, *arguendo*, the Court could follow *McAllister* in treating the FIRREA filing deadline as a statute of limitations rather than a jurisdictional requirement – at least where the FDIC has engaged in misconduct – Plaintiff has not established facts sufficient to warrant the extraordinary remedy of equitable tolling in this case. See *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) (cautioning that "the threshold necessary to trigger equitable tolling is very high" and that courts should apply the doctrine only "sparingly").

7

had until August 16, 2010 to file his suit, and that he timely complied with the 60-day deadline by filing on that date.[4]

The threshold question that the Court must address to resolve the point of contention between the parties is whether the "date of the notice of disallowance" described in FIRREA is the date on which the FDIC issues its notice of disallowance (here, May 18, 2010) or the date on which the claimant receives the notice of disallowance (which, according to Plaintiff, never took place within the 180-day period during which the FDIC may render a determination). Defendant argues that the Court should adopt the former approach, whereby the FDIC mailing suffices to provide notice under the statute. Plaintiff urges the Court to adopt the latter approach, whereby the date of notice is understood to be the date of a claimant's receipt of the mailing from the FDIC. As explained in detail below, the Seventh Circuit case to which the parties devote considerable attention in their briefing – *Capitol Leasing* – does not clearly resolve the question, nor does it arise in the same or even closely analogous circumstances as this case. In addition, the non-binding decisions from other courts reflect a split of authority on the question, with no clear cut majority rule. Accordingly, the Court returns to first principles, looking to the language and structure of the pertinent statute, to resolve Defendant's motion.

In this case, the relevant provisions of FIRREA provide that a plaintiff seeking judicial review may only preserve his claim by filing an action "[b]efore the end of the 60-day period beginning on the earlier of –

(i) the end of the period described in paragraph (5)(A)(i) [*i.e.*, the 180-day period] with respect to any claim against a depository institution for which the Corporation is receiver; or

---

[4] As Plaintiff notes, 60 days after June 15 is August 14. However, because August 14, 2010 was a Saturday, Plaintiff had until Monday, August 16, 2010, to file his suit pursuant to Federal Rule of Civil Procedure 6(a)(1)(C) if the full 180-day period applies.

>   (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i)."

12 U.S.C. § 1821(d)(6)(A)(i)-(ii). The statute further provides that if the deadline is not met, "the claim shall be deemed to be disallowed * * * [and] such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B). A different subsection of the Act provides:

> Mailing of notice sufficient. The requirements of clause (i) shall be deemed to be satisfied if the notice of any determination with respect to any claim is mailed to the last address of the claimant * * *.

12 U.S.C. § 1821(d)(5)(A)(iii). However, nowhere does FIRREA actually define the term "notice."

In their respective briefs, both parties maintain that the Seventh Circuit's decision in *Capitol Leasing* supports their position. In *Capitol Leasing*, the plaintiff submitted a claim in its capacity as receiver for the Cosmopolitan National Bank of Chicago. 999 F.2d at 189. The FDIC denied the plaintiff's claim on the 180th day after it was submitted. *Id.* at 190. However, the plaintiff claimed that it never received the notice of disallowance. *Id.* The plaintiff filed suit in federal court 86 days after the FDIC had denied its claim (*i.e.*, 26 days after the 60-day statutory filing deadline had passed). *Id.* The plaintiff argued that because it never received the letter disallowing its claim, it was not provided with adequate notice of disallowance, and thus its failure to meet the "statute of limitations" should be excused. *Id.* On appeal, the Seventh Circuit affirmed the district court's dismissal of the complaint. *Id.* at 192. The court of appeals ruled that under the two-part framework for the statutory deadline, "[i]f the *receiver decides and disallows* a claim before its statutory 180-day deadline has elapsed, the second date never comes into play. But if day 180 arrives and a *creditor has heard nothing* about its claim, then the 60-day period automatically starts running." *Id.* (emphasis added). The court stated that even if the

9

plaintiff never received the FDIC's notice, it should have filed its suit within 60 days of the conclusion of the 180-day period. *Id.* Because the plaintiff failed to do so, the court held that it did not have jurisdiction over the case under FIRREA. *Id.* at 193. Thus, on the facts of that case, the court noted that "[w]hether the FDIC ever sent Capitol a proper notice of disallowance or whether Capitol ever received it is beside the point." *Id.* at 192.

Plaintiff argues that *Capitol Leasing*'s reference to the FIRREA deadline as a "statute of limitations" (see *supra* at 6) and conclusion that "if day 180 arrives and a creditor has *heard nothing about its claim*, then the 60-day period automatically starts running" indicate that the Seventh Circuit has adopted a date-of-receipt interpretation of the statute. *Capitol Leasing*, 999 F.2d at 192 (emphasis added). Plaintiff contends that because he never received the letter, he "heard nothing about his claim." *Id.* Plaintiff thus argues that the 60-day period began running only on the 180th day, not the day on which the FDIC claims to have issued notice of disallowance. Because Plaintiff filed the underlying suit within that period, he argues that this Court has jurisdiction and that Defendant's motion to dismiss should be denied.

Defendant urges the Court to rely on the passage of *Capitol Leasing* that references "the plain language of the statute" with respect to "the time constraints built into the claims process." *Capitol Leasing*, 999 F.2d at 193. As Defendant notes, FIRREA does not require *receipt* of notice of disallowance in order to trigger the 60-day period. Indeed, the only requirement with respect to how the notice of disallowance is conveyed is that the receiver *mail* the notice. See 12 U.S.C. § 1821(d)(5)(A)(iii). Defendant's position also finds support in the language from *Capitol Leasing* focusing on when "the *receiver decides and disallows* a claim" (*id*. at 192), which at least implicitly suggests that the date of the notice rather than the date of receipt of the notice is the date that matters for purposes of triggering the 60-day period.

10

As the foregoing discussion indicates, both parties can locate in *Capitol Leasing* language that, at least when read in isolation, tends to support their positions. However, the Court concludes that the circumstances in which *Capitol Leasing* arose counsel against extrapolating too heavily from that case to this one. Most significantly, *Capitol Leasing* presented the rather unusual scenario in which "the two possible dates" for triggering the 60-day period for filing suit "coincided." 999 F.2d at 190. Accordingly, whether the FDIC sent the notice on the 180th day, and whether the claimant ever received that notice, was immaterial at the end of the day, because the deadline for filing the lawsuit would have been the same whether the triggering event was FDIC action (through the notice letter) or inaction (by virtue of the expiration of the 180-day period). In other words, because the date on which the FDIC allegedly mailed its notice of disallowance and the date on which its time to do so expired (*i.e.*, the 180th day) were coincident, the court in that case was not called upon to resolve the "mailbox issue" that arises in this case. See *id*. at 192.

In contrast to *Capitol Leasing*, here the "two possible dates" that start the 60-day clock ticking under Section 1821(d)(6)(A) are different. One possible date – "the date of any notice of disallowance" – runs either from the date on which such notice was sent or the date on which it was received. The other possible date, "which ordinarily will fall later," lies "at the end of the 180 days in which the receiver is to make a determination" and establishes "an outer limit unrelated to either the date of disallowance or to notice of such a decision." *Capitol Leasing*, 999 F.2d at 192. It is undisputed that the 180-day period elapsed on June 15, 2010, and thus the "outer limit" for filing a claim under Section 1821(d)(6)(A)(i) was August 16, 2010 – the exact date on which Plaintiff filed his claim. However, the Seventh Circuit has made clear that "[i]f the receiver decides and disallows a claim before its statutory 180-day deadline has elapsed, the

second date never comes into play." *Id.* It is the question of whether the second deadline even "comes into play" that the Court must resolve.

Before turning to the statute itself, the Court considers whether, in the absence of binding circuit precedent, the decisions of other courts to have considered the "mailbox" issue establish a clear decisional path. Unfortunately, as one district court recently observed, the courts that have interpreted notice regime under the FIRREA have so differed in their approaches that there is "no [commonly] understood meaning of 'notice.'" *Hap Taylor & Sons v. Kromann*, 2010 WL 3735607, at *5 (D. Idaho Aug. 4, 2010); see also *Espinosa v. DeVasto*, 818 F. Supp. 438, 440 (D. Mass. 1993) (holding that "[a]lthough numerous courts have blazed trails through FIRREA's jungle of linguistic fronds and brambles * * * all but the most well traveled of these routes are hopelessly overgrown with conflicting interpretations"). However, two general approaches have emerged. Under one approach, courts apply a rebuttable presumption that a letter mailed by the FDIC is received – the inference being that it is ultimately the date of receipt that constitutes "notice" under the statute if the claimant can overcome the presumption. See *Hap Taylor,* 2010 WL 3735497, at *5; *Betancourt v. FDIC*, 851 F. Supp. 126, 132 (S.D.N.Y. 1994); *Laurenzano v. Crossland,* 837 F. Supp. 514, 516-517 (E.D.N.Y. 1993); *Capital Data Corp. v. Capital Nat'l Bank,* 778 F. Supp. 669, 675 (S.D.N.Y. 1991). Under the other approach, notice is established on the date that the letter is mailed, and the date of receipt (if any) is irrelevant. See *Gugliemi v. FDIC*, 863 F. Supp. 54, 58 (D.R.I. 1994); *Robson v. Resolution Trust Corp.,* 1994 WL 874231, at *3 (D.S.C. Nov. 29, 1994); *Parker North American v. RTC*, 131 B.R. 452, 456 (Bkrtcy. C.D. Cal. 1991). Based on the parties' submissions and the Court's independent legal research, it does not appear that any clear majority position has emerged.[5]

---

[5] Both *Freeman v. FDIC*, 56 F.3d 1394, 1401 (D.C. Cir. 1995), and *Meliezer v. RTC*, 952 F.2d 879, 882-83 (5th Cir. 1992), rejected arguments that claimants were not required to exhaust administrative

Courts called upon to construe statutes must use as their "starting point * * * the language employed by Congress, and * * * assume that the legislative purpose is expressed by the ordinary meaning of the words used." *U.S. v. Lock*, 466 F.3d 594, 598 (7th Cir. 2006) (quoting *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982). "Absent a clearly expressed legislative intent to the contrary, the plain language should be conclusive." *Id.* That is not to say that statutory construction turns on the words alone; in addition to "the language itself," the Supreme Court has instructed courts to focus on "the specific context in which that language is used, and the broader context of the statute as a whole." *FCC v. AT&T, Inc.*, 131 S. Ct. 1177, 1184 (2011) (quoting *Nken v. Holder*, 129 S. Ct. 1749, 1756 (2009), and *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

The pertinent statutory text is set forth in 18 U.S.C. § 1821(d)(5) and (6). Echoing *Capitol Leasing*, Plaintiff correctly observes that Section 1821(d) creates two "portals" for claim determination. The statute gives the FDIC a choice: it may either (1) issue a determination on the claim prior to the end of the 180-day period or (2) remain silent within that time period, in which case the "claim shall be deemed to be disallowed" as of that 180th day. Section 1821(d)(5)(A)(i) provides that if the FDIC chooses to make a determination either allowing or disallowing the claim "[b]efore the end of the 180-day period," it "shall notify the claimant." Section 1821(d)(5)(A)(iii) is titled "Mailing of notice sufficient," and it states that the notice required under subsection (i) "shall be deemed to be satisfied if the notice of any determination with respect to any claim is mailed to the last address of the claimant" that appears in any one of

---

remedies where they claimed never to have received notice under 12 U.S.C. § 1821(d)(3)(c) of the period during which claims were to be filed. In both cases, the courts determined that the receiver's failure to mail the notice did not require waiver of or an exception to the exhaustion obligation. Because those cases address a separate notice provision of the FIRREA, the Court declines to accord substantial weight to their outcomes in deciding the notice issue presented in this case.

three places, including "on the depository institution's books," "in the claim filed by the claimant," or "in documents submitted in proof of the claim." 18 U.S.C. § 1821(d)(5)(A)(iii). The 60-day period for seeking administrative or judicial review of the FDIC's determination is triggered by "the earlier of" two dates: (1) the end of the 180-day period referenced in paragraph (5)(A)(i) or (2) "the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(ii)." *Id.* And, as noted above, if the FDIC (as receiver) "decides and disallows a claim before its statutory 180-day deadline has elapsed, the second date never comes into play." *Capitol Leasing*, 999 F.2d at 192.

Construing the statutory language as a whole, as it must, the Court concludes that mailing of notice to the last known address of the claimant is sufficient to trigger an obligation on the part of the claimant to seek administrative or judicial review within 60 days of the date on the face of the notice of disallowance. Although that result may appear severe, it is the result compelled by the statute that Congress wrote. Congress could have required "receipt" of the notice, rather than "mailing" alone. Or Congress might have been silent on the "mailing" versus "receipt" dichotomy, in which case the Court might have been persuaded to adopt either a receipt-based notice regime or the kind of rebuttable presumption of receipt formulation adopted in some of the decisions cited above. Congress might also have created a "safety valve" for claimants by allowing them to file on the *later* of the end-of-the-180-day-period or date of the notice-of-disallowance, or, even more generously, the date of receipt of the notice of disallowance. But that is not the framework that Congress created. Instead, in Section 1821(d)(6)(A)(i), Congress chose to trigger the 60-day period for filing suit with the *earlier* of the two possible dates; in Section 1821(d)(6)(A)(ii), Congress established one of the dates as "the *date of any notice* of disallowance"; in Section 1821(d)(5)(A)(i), Congress directed the

14

FDIC to "*notify the claimant* of any determination with respect to such claim [against a depository institution]"; and in Section 1821(d)(5)(A)(iii), Congress expressly stated that the notice requirement in subsection (5)(A)(i) "*shall be deemed to be satisfied* if the notice of any determination with respect to any claim is *mailed to the last address* of the claimant." (All emphasis added.)

Here, the following facts are undisputed: On May 18, 2010, prior to the end of the 180-day statutory period, the FDIC prepared a notice of disallowance. On that same date, the FDIC mailed the notice to Plaintiff (by certified mail) to a post office box address that Plaintiff previously had provided to Corus Bank – the "depository institution" in question. In taking these actions, the FDIC satisfied the statutory requirements for notice, and the alternative portal that opens in the event of FDIC inaction over the entire 180-day statutory period "never c[ame] into play." *Capitol Leasing*, 999 F.2d at 192.

Although not germane to the statutory construction on which the proper disposition of Defendant's motion turns, the Court observes that one practical complication for Plaintiff in this case was his own instructions to the post office to forward mail from his Des Plaines post office box to his downtown Chicago post office box. Plaintiff submits that he left this instruction "for prompt response to pleadings in various pending state and federal matters." But given the statutory notice scheme and the relatively truncated period for seeking judicial review, Plaintiff could have far better achieved his objective by directly providing the FDIC with the address of the Chicago post office box – in essence, providing a new "last address" for the FDIC's use in communicating its determination, if any. See *McLaughlin v. FDIC*, 796 F. Supp. 47, 49 (D. Mass. 1992) ("The statute does not burden the FDIC with the task of making an independent investigation into the claimant's correct address").

Finally, Plaintiff's suggestion that the FDIC should have provided notice to him by other methods and his contention that its failure to do so constituted fraud are not well taken. Accepting as true Plaintiff's assertions that he was encouraged to call to learn the status of his claim and that, in response to his inquiries, FDIC personnel "acted in free-flow spirit of information exchange," the FDIC still was under no legal obligation to use any "alternative access routes" – regular mail, e-mail, or telephone – for notifying Plaintiff of its final determination. Congress spelled out in Section 1821(d)(5)-(6) the procedures through which the FDIC is to issue its formal determinations. The affidavit attached to the FDIC's brief establishes the FDIC's compliance with those procedures. There is no support for Plaintiff's contention that the FDIC "acted to mislead" him into believing that no decision had been reached.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss [16] is granted and Plaintiff's lawsuit is dismissed for lack of subject matter jurisdiction. In addition, Plaintiff's motion for leave to file a sur-reply [28] is granted.

Dated: September 29, 2011

_____
Robert M. Dow, Jr.
United States District Judge